## LAMISON v. YAZOO & M. V. R. CO.
### No. 16408.

Court of Appeal of Louisiana. Orleans.

April 5, 1937.

Robert Todd, of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, E. C. Craig, of Chicago, Ill., and Chas. N. Burch, H. D. Minor, and C. H. McKay, all of Memphis, Tenn., for appellee.

WESTERFIELD, Judge.

This is a suit for damages ex delicto in the sum of $30,003. Amos Lamison, colored, as natural tutor of his eleven year old minor son, George Lamison, alleges that his son lost his left foot as the result of the deliberate and wanton cruelty and carelessness of the servant of the defendant, the Yazoo & Mississippi Valley Railroad Company, on March 19, 1935, at about 11:45 a. m. under the following circumstances: "On that day he was playing on South Front Street beside the railroad track over which defendant's trains passed. The track at this point lay just outside the street and ran parallel to it. A freight train owned and operated by defendant came upon said track and was brought to a stop opposite the point where the said child was playing. The child, George Lamison, climbed up the side of one of defendant's box cars and reached a point where he was holding to the top grab iron on the side of the car. At this moment an employee of defendant, who was at the time on top of the box car, came to the edge of said car and wantonly stamped (stomped) his foot on the child's right hand by which he was holding, causing the child to release his grip and fall to the ground. In falling the child's foot went under the car and became jammed between the rail of the track and a rail of the switch with (which) joined the track at that point.

The train remained stationary for more than a minute while the child screamed for someone to release him. Said employee of defendant, although he could not have failed to hear the child's screams, ignored them. Thereupon the train started forward and the wheel rolled over the child's left foot and lower leg mangling it horribly, and severing sufficient of it to free the child. Thereupon, the child dragged himself free and crawled about twenty-five feet to the roadway."

Defendant denied that its servant was guilty of the act of cruelty imputed to him as well as all charges of negligence and averred that George Lamison was injured in attempting to board a moving freight train operated by defendant, and that his injury was due to his own negligence while a trespasser on the property of defendant.

The case was tried by the judge of Division E of the Civil District Court without the intervention of a jury and resulted in a judgment in favor of defendant dismissing plaintiff's suit. Plaintiff has appealed.

It is obvious that the issue, as raised by the pleadings, presents only a question of fact, for if plaintiff's son lost his foot in the manner described in the petition, there can be no question of liability upon the part of defendant Railroad Company. This much is conceded by its counsel. The learned judge in his brief reasons for judgment said:

"This case has been thoroughly argued by both counsel. The testimony of the principal witnesses has been transcribed, and I have had the advantage of reading this evidence. I have done so with great care.

"Counsel for the plaintiff has, with indefatigable zeal, presented to the Court every favorable point on behalf of his client. This unfortunate negro boy has undoubtedly sustained a serious injury which forever will handicap him in making a livelihood. To me, however, the testimony of this little boy and of the colored girl does not bring such conviction of its correctness that I would be justified in rendering a judgment against the defendant. It is true that Blount, the special officer, who testified on behalf of the defendant proved himself to be a very unsatisfactory witness. He was shown, by his answers to certain questions, to have little or no regard for the truth. The little boy himself made conflicting statements, and his explanation of these statements was not convincing. For the foregoing reasons plaintiff's suit is dismissed at his cost."

There were but two eyewitnesses to the accident, the plaintiff's minor son, George Lamison, and Marguerite Jones, a fourteen year old negress with whom he had been playing just prior to the occurrence. George Lamison in his testimony stated that he had been playing catcher with Marguerite Jones on a cinder pile when the train came along and stopped; that seeing a piece of wood in one of the freight cars, described as a "gondola car," he got into the car and threw the wood out and alongside of the track; that he looked out and saw Mr. W. D. Blount, a roundsman in the employ of the Railroad Company, who hollered to him to get out of the car and as he attempted to obey, scrambling over the side of the car for that purpose, Blount stomped on his hand causing him to fall and his leg to get caught in the switch, with the result that the wheels of the train rolled over it. This account of the manner in which the accident happened is at variance with one which he made, almost immediately after the accident, to Officer Lockhart, a patrolman in the employ of the New Orleans police department. He told Lockhart that a white man (unnamed) hollered at him and that he ran across the track, got his foot lodged in the switch and the engine of the train ran over him. Lockhart is to some extent corroborated by Albert Hudson, who was present and heard part of the statement. Dr. A. J. Italiano, who operated upon young Lamison just after the accident, amputating a part of the mangled left leg, testified that the boy told him he had been pushed under the train.

A. A. Dodson, the claim agent of the defendant, H. A. Pallfelt and a stenographer, O. A. Gonzales, went to the Charity Hospital to see young Lamison the day after the accident, and questioned him concerning the manner in which it happened. Lamison told them that he was walking along the track, two or three feet distant from the train, and that a man in one of the freight cars shoved him with his hand and he fell under the train. When the boy was confronted with this statement while on the witness stand, he explained it upon the ground that his brother had cautioned him

not to reveal the fact that he had boarded the freight car.

Marguerite Jones gave a statement to defendant's claim agent, Dodson, to the effect that a watchman (she did not mention Blount's name though she subsequently testified that she had known Blount for some time) had stomped on young Lamison's hand and caused him to fall under the car. She said that the watchman wore a raincoat with a fur collar. In her testimony she denied that the watchman, whom she identified as Blount, wore a raincoat and explained her statement to the contrary by saying that Dodson, the claim agent, told her to say that Blount was thus attired, the implication being that Dodson tricked her into making a false statement for the purpose of subsequently confronting her with it.

We agree with the conclusion of our learned brother below concerning the unsatisfactory character of the testimony of Blount, defendant's employee and main witness. He was apparently afflicted with a very bad memory and compelled to make admissions that he was mistaken in a number of statements which he had made on the witness stand concerning matters which have little or no direct bearing upon the issue but which reflect upon his credibility. He denied that he knew anything about the injury to George Lamison until some time after it had occurred and claimed to be on another part of the long freight train, a considerable distance from the car which rolled over Lamison's leg. But if we reject the testimony of Blount entirely and consider the case from the standpoint of plaintiff's evidence alone, we are forced to conclude that plaintiff's claim has not been established with legal certainty. The several conflicting statements of George Lamison as to the manner in which the accident occurred and his admission that he purposely misstated the facts at the suggestion of his brother, deprive his testimony of all probative value and cast suspicion upon the sincerity of his cause. There remains only the evidence of Marguerite Jones. She admits having made a false statement to defendant's claim agent. Her explanation to the effect that she was persuaded to do so by the agent himself is unconvincing. Moreover, it is contradicted by other witnesses who were present at the time. The effect is to discredit her testimony. Falsus in uno falsus in omnibus.

Plaintiff's case, resting, as it does, upon such foundation, must fall.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.