### DIXIE HOMESTEAD ASS'N v. SCHMITT.

### SCHMITT v. ROUSSEL.

### No. 16497.

Court of Appeal of Louisiana. Orleans.

May 16, 1938.

F. W. Gaudin and C. J. De Baroncelli, both of New Orleans, for appellants Earl Miller and Louis J. Roussel.

Weiss & Weiss, of New Orleans, for appellee Henry J. Schmitt.

McCALEB, Judge.

Henry J. Schmitt was the owner of certain real estate situated at the corner of Canal and South White streets in the city of New Orleans, bearing municipal Nos. 2800–06 Canal street and 117 South White street. The improvements thereon consisted of two buildings. The ground floor of the one on the corner of White street was used as a restaurant, bar and barbershop, while the second floor was occupied as lodging quarters. The other building was used by Schmitt as his dwelling.

The Dixie Homestead Association held a vendor's lien and first mortgage on this property amounting originally to $5,300, but subsequently it had been reduced by Schmitt to approximately $4,700. In addition to this encumbrance, Schmitt owed the city of New Orleans past-due taxes and paving charges totaling $2,000.

On December 14, 1934, one Louis Roussel made a written offer to purchase from Schmitt the portion of the property situated on the corner of South White street for $6,700. Schmitt accepted the proposal. This contract provided that the sale would be consummated not later than February 15, 1935, and it was also stipulated that the terms would be $2,000 cash and that the balance due was to be a loan which would be obtained by the purchaser to refinance the homestead mortgage existing on the entire premises. In other words, it was the

intention of the parties that Schmitt would use the cash to be received in the transaction to liquidate the past-due taxes and paving charges and would acquire ownership of the dwelling in which he resided free from all encumbrances. At the time this contract was made, Roussel was given immediate possession of the premises, upon his representation that it was necessary for him to make certain repairs and alterations to the building in order to obtain a loan of sufficient size to refinance the first mortgage on the entire property. He also told Schmitt that he was unwilling to expend the funds necessary to make these alterations unless he had some security for his money and he prevailed upon the latter (upon the representation that the cost of the work would amount to approximately $2,500) to grant a second mortgage on the property in his favor for that amount. This mortgage was executed on the same day as the agreement of sale.

In conformity with the foregoing arrangement, Roussel caused certain repairs to be made to the premises but he later defaulted on the contract of purchase by failing to take title to the property on February 15, 1935. Thereafter, Schmitt tried on numerous occasions to have Roussel vacate the premises without success, and on April 1, 1935, he filed suit against him under No. 219690 of the docket of the civil district court for the parish of Orleans, seeking to have the $2,500 mortgage annulled and canceled for failure of consideration.

Roussel resisted the demand in that suit principally upon the ground that he had expended more than $2,500 in repairing and improving Schmitt's real estate and that, consequently, the consideration for the granting of the mortgage had not failed as alleged.

Before the suit between Schmitt and Roussel could be tried, the Dixie Homestead Association, on October 4, 1935, instituted foreclosure proceedings against Schmitt on the first mortgage held by it, under No. 214182 of the docket of the civil district court for the parish of Orleans in the proceedings entitled "Dixie Homestead Association v. Henry J. Schmitt." In accordance with the prayer of the homestead's petition, executory process issued and the property was seized and sold by the civil sheriff under the writ. The auction took place on December 5, 1935, and the property brought the sum of $9100 cash.

After payment of the first mortgage, past-due taxes, paving charges, costs of court, and attorney fees, there remained a balance due in the hands of the civil sheriff amounting to $1,391.87.

On January 13, 1936, one Earl Miller intervened in the foreclosure proceedings. He alleged that he was the holder and owner for value before maturity of the second mortgage note in the amount of $2,500, executed by Schmitt in favor of Roussel, and that, as such, he was entitled to the sum of $1,391.87 held by the civil sheriff. On the showing made by the averments of this intervention, the sheriff was ordered to show cause why the balance of the proceeds of the sale should not be turned over to Miller to be credited upon the second mortgage note. On the day fixed for the hearing of the rule nisi, Schmitt appeared and opposed the payment of the proceeds held by the sheriff to Miller upon the ground that Miller was not the owner and holder of the mortgage note but that he was merely a party interposed by Roussel in order to enable the latter to avoid the consequences of the suit previously filed by Schmitt against him for the cancellation of the second mortgage.

Upon being thus advised of the issues presented, the court ordered that the case of Schmitt v. Roussel be consolidated for hearing with the proceedings taken by Miller. A trial was thereafter had and evidence was submitted by all interested parties in support of their pleadings. The judge, after due deliberation, ruled as follows:

(1) That Earl Miller was not the bona fide holder and owner for value before maturity of the second mortgage note declared upon by him but that he was in fact the holder of said note as agent for, and for the convenience of, Roussel, the owner thereof, and that Schmitt, the mortgagor, was entitled to plead and offset, as against Miller and Roussel, any equities existing between Roussel and himself.

(2) That Miller and Roussel, in respect of any claims arising out of the second or collateral mortgage and the repairs to the premises, which the note was designed to secure, were entitled to the actual value of those repairs, which were fixed at $716.80, representing the gross estimate given by experts who testified in favor of Schmitt.

(3) That Schmitt, as owner of the premises foreclosed upon, was entitled to recover from Roussel and Miller rent for the

use of said property from February 15, 1935 (the date upon which Roussel had contracted to take title), up to December 14, 1935 (the date of adjudication in the foreclosure proceedings), at the rate of $74.83 per month (or a total of $748.30), such rental being based upon the valuation of the property as fixed by the adjudication thereof in the foreclosure proceedings.

(4) That Roussel and Miller were also entitled to have judgment against Schmitt, in addition to the value of the repairs due them, in the sum of $246, representing certain amounts paid by Roussel to and for the account of Schmitt, thus making the total indebtedness of Schmitt, in favor of Roussel and Miller, the sum of $962.80.

The judge thereupon deducted the sum of $748.30 (the rental value of the property) from $962.80 (the total amount due by Schmitt to Roussel and Miller) and found that there was a net balance in favor of Roussel and Miller of $214.50. He thereupon awarded judgment in favor of Schmitt for the surplus in the hands of the sheriff, amounting to $1,391.87, less the sum of $214.50 which he ordered the sheriff to pay to Roussel and Miller. From this judgment, Miller and Roussel have appealed.

The first question presented for our consideration is whether Miller is the bona fide holder for value before maturity of the second mortgage note.

Miller testified that he is a bus operator for the New Orleans Public Service and earns between $130 and $140 per month. He also says that he is engaged in the business of lending money to employees of the Public Service but he keeps no bank account and has no records of his transactions. He states that, a few days after Schmitt had executed the mortgage in favor of Roussel, he bought the mortgage note from Roussel for $2,000; that he paid him $1,200 in cash at that time and later made other cash payments to him amounting to $800.

Counsel for Schmitt brought out, in the cross-examination of Miller and Roussel and by other evidence produced on Schmitt's behalf, that shortly after Miller allegedly obtained the note from Roussel he gave it back to the latter and that Roussel subsequently pledged it as collateral to secure a $315 obligation he owed to the American Brewing Company.

■ The trial judge did not believe Miller. Neither do we. A perusal of his statement has sufficed to demonstrate the falsity of it. We are convinced that he was never the lawful holder of the note and that he conspired with Roussel to pose as such for the specific purpose of depriving Schmitt of the right of asserting the defenses which the latter had to the claim of Roussel.

Being, then, of the opinion that Miller was not the lawful owner and holder of the mortgage note, we pass on to a determination of the question as to whether there was any consideration flowing to Schmitt for the execution of the mortgage in Roussel's favor. The court below correctly found that the mortgage was merely a collateral one. In other words, it was given by Schmitt to Roussel for any amount which would be expended by Roussel in the repair and alteration of the premises.

■ Roussel testified that the cost of repairing the property exceeded $2,400 but he kept no receipts or canceled checks to substantiate his assertion. It is manifest that it was his duty to do this in view of his arrangement with Schmitt. Apart from this, however, his evidence cannot be favorably considered, inasmuch as we find that he testified untruthfully with respect to the transfer of the note to Miller. The maxim "falsus in uno, falsus in omnibus" applies and therefore no part of his statement is entitled to credence.

The only other evidence submitted by Roussel, in proof of the repairs made to the premises, is that of Pete Hahlos, Hugh Taylor and Albert Johnson. Hahlos stated that he painted certain parts of the building under a contract with Roussel for which he received $595 in cash, plus $100 in materials. The contract was verbal and the payments he alleges to have received were in cash. His testimony is not impressive and, while we are inclined to believe that he was paid an undetermined amount in cash, he has not proved to our satisfaction that he obtained anything like the sum of $695. The same may be said with respect to the testimony of Hugh Taylor, who claimed to have received nearly $150 from Roussel for work performed as a carpenter, and the statement of Albert Johnson, who says he was paid $248 for laying certain pavement in front of the premises.

Mr. J. W. Haase, Sr., a contractor doing business for many years in the city of New Orleans, testifying on behalf of Schmitt, declared that he estimated the gross value

of the repairs made by Roussel to be $766.-10. He pointed out that a great deal of this work was defective. In his opinion, it would cost $177 to replace the faulty construction and he stated that the net value of the improvements made by Roussel is $589.10.

 The district judge, after considering all of the testimony adduced and after a personal inspection of the premises, concluded that Roussel was entitled to the sum of $716.80 as the actual value of the repairs installed by him. We are unable to discern error in his judgment on this point.

In addition to the above amount, Roussel was awarded the sum of $150 which he had paid to Schmitt on account of the purchase price of the property and the sum of $96 which he had given the homestead for account of Schmitt. These allowances are not disputed.

 Schmitt is undoubtedly entitled to recover from Roussel a reasonable rental for the use of the premises from the time the latter defaulted on the agreement of purchase to the date on which he was compelled to vacate. The judge, in determining the value of his occupancy, based the award upon the value of the property as fixed by the adjudication thereof in the foreclosure proceedings. We think his conclusion was correct.

The judgment appealed from is therefore affirmed.

Affirmed.