*877 ON REHEARING OF CASE NO. 10513
AYRES, Judge.
Primarily concerned on this rehearing is a question of the sufficiency of the evidence appertaining to certain alleged payments claimed as credits on the obligations herein sued upon. Ultimately, the ■question to he determined is whether or not defendants have established these payments by a reasonable preponderance of the evidence. Inasmuch as defendants have admitted the execution of the obligations sued upon and the receipt of the principal sums denominated therein the burden is upon them to establish to a legal certainty and by a clear preponderance of the evidence their exoneration from their obligations.
The ten payments upon which defendants rely are numbered 1 through 10 and are identified as to dates and amounts in our original opinion. Those items numbered 9 and 10, allegedly representing payments of $12,000 and $10,000, respectively, were, except as to $1,000 thereof in the form of a check, disallowed, while those numbered 1-8, inclusive, were allowed as credits. The propriety of this allowance constitutes the subject matter for reconsideration. While plaintiff’s complaints relate to the allowance of all the credits enumerated under Items 1-8, inclusive, special emphasis is placed upon Items 1, 3, 4, 5, and 7.
From our reconsideration of the record, we continue in the opinion that credit should be allowed for Items 2, 6, and 8, and for $1,000 of the amount claimed under Item 10. With reference to Item 2, it may be pointed out that $2,000 was transmitted by Western Union to the Rapides Bank and Trust Company, Alexandria, Louisiana, at a cost of $11.72, and that under Item 6 a similar remittance of $1,000 was made to Earl K. Long at Baton Rouge. We find no firm, substantial basis or reason under the testimony of Joe T. Cawthorn and Joseph A. Sims for the disallowance of a credit of $6,000 referred to in Item 8, since it appears this remittance came into Long’s possession. Of the remittance claimed under Item 10, $1,000 was shown to have been by check deposited to Long’s political fund in the Rapides Bank and Trust Company.
While there is a possibility that the amounts abovementioned constituted political contributions to Long’s congressional campaign, which was then under way, and to which the named defendant testified he generously contributed, defendants nevertheless assert these particular sums were intended as payments upon their obligations. Under the aforesaid statement of facts, it is made to appear that, since Long received the benefit of these remittances, credit should be allowed the defendants therefor, particularly since there was no positive proof they were not intended as payments.
With reference to the testimony concerning these alleged credits, particularly in regard to those remaining for discussion, plaintiff would invoke the principle, or maxim, “falsus in uno, falsus in omnibus,” as to defendant and his witnesses. This principle was held to apply where a witness was found to have testified untruthfully to some phases of a case, and, as a consequence, it was said no part of his statements was entitled to credence. Dixie Homestead Ass’n v. Schmitt, 181 So. 218, La.App., Orleans 1938. See, also, Wheeler v. Turlich, 176 La. 301, 145 So. 546 (1933); Lamison v. Yazoo & M. V. R. Co., 173 So. 462, La.App., Orleans 1937; Wyatt v. Consolidated Underwriters, 98 So. 2d 537, La.App., 2d Cir. 1957.
That we give effect to this principle is urged upon a basis of our findings as to defendant Matthews’ testimony in the case of Barrett v. Matthews, 138 So.2d 151, La. App., 2d Cir. 1962, and on the findings of not only the trial court but of this court in the instant case with reference to the alleged credits listed as Item 9 and $11,000 of Item 10. The trial court found, and in *878 those findings we concurred, that these alleged payments purportedly made at Camp-ti on August 25 or 28, 1960, and at Gol-donna August 26, 1960, could not have been made personally to Earl K. Long, as testified by Frank Matthews, James Roy Matthews, and Ellis Spears, and whose testimony, it was contended, was corroborated by that of Willis W. Findley and J. D. Harkins, as Long was not present at these locations at the times specified.
In this connection it may be pointed out that Findley, Matthews’ bookkeeper, was emphatic in his testimony, by deposition, that he prepared a $10,000 cash withdrawal; that he delivered the money to Matthews and posted the appropriate entries in Matthews’ records on August 28, 1960. Matthews testified that he made personal delivery of this sum to Long at Campti on August 25, 1960, and sent James Roy Matthews, his son, and Ellis Spears, his woods superintendent, with $11,000 in cash to Long in Goldonna on August 26, 1960. During the last week of the congressional campaign, preceding the second primary on August 27, 1960, Long was engaged exclusively within the southern portion of the district in Avoyelles and Rapides parishes south of Alexandria; he was, in fact, in those parishes where, in a final night engagement on August 25, 1960, at Glen-mora, he became ill. Thereafter, he was immediately returned to his suite at the Bentley Hotel in Alexandria, where he remained until the election returns were in on the night of Saturday, August 27, 1960. He was then transferred to the Baptist Hospital in that city where he was confined and continued under treatment until the day of his demise September 5, 1960.
For the aforesaid reasons, we are of the opinion that the principle previously mentioned should be given effect in the instant case, at least, to the extent of requiring that testimony of the witnesses be corroborated.
Under Item 1, it is represented that $5,-000 was personally delivered to Long at Pleasant Hill on July 9, 1960. Findley testified to drawing a check on that occasion' for $2,000 which he cashed and supplemented with $3,000 in cash from his employer’s safe and thereby made up a package containing $5,000 which he personally delivered to Long at Pleasant Hill. Only Findley testified as to the contents of the package. This testimony does not meet the requirements of proof.
In connection with the credit claimed as Item 3, which concerns the alleged delivery of $40,000 in currency personally by Matthews to Long at the latter’s farm at Winn-f ield on July 21, 1960, Matthews and Findley were the only ones who testified as having any direct knowledge involving this transaction. Findley testified he prepared the package by obtaining $38,000 in cash from Matthews’ safe and by cashing a $2,000-check. This, he claims to have delivered to Matthews, who testified that he delivered it to Long in person with no one else present. Corroboration was sought through testimony of Long’s former chauffeur and a former supporter as to purported admissions of Long. Concededly, such testimony is of the weakest character and, under the circumstances disclosed here, is entitled to little, if any, consideration,
However, as to the $5,000 claimed as a credit under Item 4, it appears this claim must be disallowed, not necessarily and exclusively because of the testimony, which creates serious doubt as to the reality of this transaction, but because the remittance, if made as claimed, was made to Jay Cheval-lier who was not shown to have been authorized to receive such payment. The person to whom payment of an obligation may be made is the creditor himself or someone having the power from him to receive it, or one who is authorized by court or by law to receive payment for him (LSA-C.C. Art. 2140). The record is void of any proof that Long either received, ratified, or profited by this alleged payment.
Item 5 relates to an alleged payment of $6,000 in cash purportedly made to Governor Long at Chestnut on August 11, 1960, by *879 James Roy Matthews and Ellis Spears. Findley prepared this package, also, which he testified he gave to either Mr. or Mrs. Frank Matthews and presumably for the account of Long. On August 11, 1960, Findley, so he said, cashed a check for $4,-000 and obtained $2,000 from defendant’s safe to make up the total alleged payment. James Roy Matthews testified to delivery of the package on the aforesaid date. In addition to Spears, those offering testimony to support this claim were J. D. Harkins and Robert Gentry, who testified Matthews handed a package to Long, although they knew nothing of its contents. James Roy Matthews testified, however, that, on that occasion, he saw President John S. Kyser and Dean Sylvan W. Nelken, of Northwestern State College, at the Chestnut rally and talked to both of them. Both Kyser and Nelken denied seeing or talking to Matthews on this occasion. Moreover, the record establishes that the summer session of the college closed on August 6th and that Dr. and Mrs. Kyser left immediately for Chicago, where, on August 9, 1960, they departed by Pan-American plane for Europe where they were on vacation for three weeks.
The claim of a credit of $9,000 under Item 7 is supported only by the testimony of Findley and James Roy Matthews. Findley testified that on August 19, 1960, at the request of defendant Matthews, he counted out $9,000 in cash from his employer’s safe, and that he, accompanied by James Roy Matthews, handed this package to Long at Robeline. James Roy Matthews did not claim to know what was in the package. Findley’s testimony as to this item was uncorroborated ; hence, the proof offered was insufficient.
The testimony with reference to the alleged payments, in many respects, is not only vague but inconsistent and contradictory. For instance, defendant Matthews, in attempting to account for his possession of the cash which made up these alleged payments, testified that he had this cash in his safe; that he obtained it from his lockbox in a bank, whereas an official of one of the two banks at defendants’ domicile testified defendants had never had a lockbox in his bank (no one was called to testify that they had a lockbox at the other bank); that various checks were cashed, and, finally, that he borrowed money with which to make these payments. Findley testified that Matthews borrowed $41,000, on one occasion, and, soon thereafter, $20,000 from T. R. Gafford. Matthews testified that he first borrowed $40,000 from Gafford and later, $25,000 or $30,000. Why it was necessary, with all this cash on hand and in boxes, to identify these purported payments with checks drawn for smaller amounts is not explained.
In none of these instances, was there any substantial corroboration of either the testimony of Frank Matthews or of Findley, his bookkeeper, and their testimony varied in material particulars such as the make up of the alleged remittance on August 28, 1960, when Long was seriously ill and undergoing treatment in the hospital. Findley was adamant in his testimony that the remittance was prepared on August 28, 1960, as his bookkeeping entries indicated. Matthews would have the court believe delivery was made prior thereto and before Long entered the hospital. Nevertheless, the date selected, August 25, 1960, was also an impossible date as Long was at neither Gol-donna nor Campti on that date.
Mrs. Lucille Long Hunt, from whose possession $50,000 was obtained for delivery to the defendants, soon after her brother’s death, in company with an older sister, Mrs. Clara Knott, interviewed Mrs. Matthews and Matthews’ bookkeeper, Findley, with reference to the indebtedness due her brother. According to Mrs. Hunt’s testimony, Mrs. Matthews, who is a defendant in this case, readily admitted the indebtedness and *880 that it was due in its entirety — no credits were claimed. With this, it was testified, Findley agreed. Nevertheless, Findley was not produced as a witness, notwithstanding plaintiff’s counsel’s insistence and defendants’ counsel’s assurance he would be produced at the trial. Further, it should be noted that, near the conclusion of the trial, Mrs. Matthews became ill and, on the advice of her physician, did not testify.
It may be also noted that when these funds were delivered by Long to the Matthews, $46,000 under date of June 12, 1960, $64,000 under date of June 13, 1960, and $50,000 under date of June 18, 1960, Long’s congressional campaign was well under way. Nevertheless, under the instruments executed by defendants, the maturity of their obligations was at least six months away. These facts are inconsistent with any intention on the part of Long to use those funds in his campaign.
We may observe, too, that when in November, 1960, plaintiff and counsel called on the defendants with regard to this indebtedness, defendant Matthews and Find-ley left for Many. After the lapse of a few hours, Matthews returned, but, under the pretense of the absence of his bookkeeper, refused plaintiff an inspection of his records, but promised a statement of the credits claimed. This, however, was never furnished despite at least two written requests therefor.
While the relationship between Long and Matthews, as concerns this transaction, was unorthodox, influenced, no doubt, by their personal and political friendship, it must nevertheless be observed that when Matthews obtained the loans he, his wife, and son gave their notes in evidence thereof. However, when payments were allegedly made almost entirely in cash and in sums of as much as $40,000, no receipt or other record of payment was exacted. Such procedure is not in accord with usual business practices and is inconceivable where payments in cash involve such large amounts.
From our reconsideration of the record, we find no substantial corroboration of defendants’ testimony. The record is unconvincing as to the credits which we have disapproved. The burden being on the defendants to establish by clear, positive, and convincing evidence their release or exoneration from their obligations, the conclusion is inescapable that they have not borne this burden.
Defendants’ application for a rehearing directed to that part of our former decree disallowing certain credits upon the obligations sued upon having been overruled, they are entitled, if they now so desire, to make a second application so far as the credits originally allowed are concerned, which, on this rehearing, have been disallowed.
Hence, the judgment appealed is now amended by increasing the principal award to the sum of $99,998.28 and, as thus amended, it is affirmed at defendants-appellants’ cost.
Leave is granted to the defendants to apply for a second rehearing as to the credits disallowed herein.
Amended and affirmed.
GLADNEY, J., dissents in part, adhering to the views expressed in the original opinion.